WILLIAM G. FREEDLEY'S ADMX. *v.* MANCHESTER MARBLE CO.
ET AL.

May Term, 1925.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 7, 1925.

*Mortgages—Necessity of Exercising Option to Declare Entire Debt Due on Default in Installment—Bill Held Insufficient Notice of Election to Exercise Option—Extent of Notice Given by Bill—Effect of Amendment to Bill as Election or Notice—Judgment—Erroneous Decree—Rights of Creditors Attaching Mortgaged Property During Pendency of Foreclosure Proceedings—Parties.*

1. Where mortgage securing indebtedness payable in installments contained no acceleration clause in case of default, but by a subsequent agreement, in contemplation of sale of property, between mortgagee's executrix, mortgagor, and prospective purchaser, it was provided that in the event of certain specified defaults for a period of 30 days, the whole principal debt, or so much thereof as remained unpaid, should, at option of obligee, become due and payable immediately, such accelerative rights were operative only when obligee, in exercise of option, elected to make them so and by some affirmative action made known to obligor intention to declare all unpaid portion of debt due.

2. Bill in foreclosure proceedings, based entirely on mortgage securing indebtedness payable in installments, and containing no acceleration clause in case of default, which failed to allege subsequent agreement containing such a clause, *held* insufficient notice that plaintiff had elected to exercise optional right of acceleration in such subsequent agreement, making whole debt due and payable, the allegation in such bill relied on by plaintiff as having such effect, that more than $45,000 "is now justly due and payable," which amount was more than total amount secured by mortgage, being merely a conclusion of law.

3. Such bill of foreclosure, based entirely on mortgage as given, without any allusion to plaintiff's optional right of acceleration, or

to exercising same, was notice to obligor that obligee was seeking to foreclose mortgage independently of such right.

4. Amendment to such bill of foreclosure was not retrospective, either as an election to take advantage of option in agreement subsequent to mortgage, to make whole debt due and payable in case of certain defaults, or as notice of such election, and could not have such effect, there having been no option to exercise since parties had entered into certain stipulation, which had been in force and acted upon for more than six months prior thereto.

5. Where mortgage securing indebtedness payable in installments contained no acceleration clause, and a subsequent agreement between mortgagee's executrix, mortgagor, and prospective purchaser, providing that in event of certain defaults continued for a period of 30 days, at option of obligee, entire amount remaining unpaid could be declared due and payable, had been ended by subsequent stipulation of parties to foreclosure proceedings based solely on such mortgage, final decree for full amount remaining unpaid was erroneous, not being the relief prayed for, to which parties were entitled under stipulation.

6. In foreclosure proceedings, petition of creditor to intervene as party defendant, on ground that such creditor had made attachment of mortgaged property after bill was brought, *held* properly denied, in absence of showing either that tender was made of amount due on mortgage, or offer made to pay such amount.

7. Where attachment of mortgaged property was made during pendency of foreclosure proceedings, attaching creditor is not necessary party to suit, although bound by decree.

8. Creditors attaching mortgaged property during pendency of foreclosure proceedings have no right to come in by petition to defend suit.

9. Such creditors can make themselves parties to such suit only by filing a bill to protect their rights.

APPEAL IN CHANCERY. Heard on bill, answer, and facts found by chancellor, in vacation after December Term, 1925, Bennington County, *Fish*, Chancellor. Petition of People's Trust Company to intervene denied, and decree for plaintiff. Defendant, Manchester Marble Company, and the intervening

petitioner, People's Trust Company, appealed. The opinion states the case. *Reversed and remanded, with directions.*

*Marvelle C. Webber* for defendant Manchester Marble Co.

*Stickney, Sargent & Skeels,* and *Murchie & Murchie* (Concord, N. H.) for intervening petitioner, People's Trust Co.

*Lawrence, Stafford & Bloomer* for plaintiff.

STATEMENT BY WATSON, C. J.    On November 7, 1906, William G. Freedley was the owner of the property described in the bill, situated in the town of Dorest, this State, on which date he conveyed the same by deed to Edwin Shuttleworth Company, a corporation of the state of New York, and said deed was properly recorded.

On the same day Edwin Shuttleworth Company executed and delivered to William G. Freedley a mortgage upon said property, providing for the payment of the sum of $105,000.00, specified in the one promissory note of same date, payable $3,000.00 January 1, 1907, $6,000.00 July 7, 1907, and $6,000.00 on or before the first days of January and July in each year thereafter until said principal sum should be fully paid, together with interest at the rate of five per cent. per annum from and after the first day of January, 1907, payable semi-annually on the first days of January and July in each year. This mortgage was duly recorded.

The property consisted of a marble mill and shops, office building, and three tenements, together with considerable land, situated on the line of the Rutland Railroad and the highway at Freedleyville, so-called, a short distance north of the village of East Dorset, and quarries and quarry lands and farming land, and woodland on the mountain-side at a distance of about a mile from the mill, the said quarries and mill being connected by an incline railroad for the transportation of marble blocks between the quarry and the mill—altogether there is about 175 acres of land.

Some time thereafter and before January 22, 1918, but just when does not appear, William G. Freedley died and Katherine E. Freedley, his widow, was appointed administratrix or executrix of his estate—in some of the exhibits in the case she is

designated as executrix, and in some, as administratrix, without regard to technical distinctions, and this suit is brought by her as administratrix.

The other facts of record, material to the disposition of the case, appear in the opinion of the Court.

WATSON, C. J.    This case is here on exceptions and appeal by the Manchester Marble Company, and whenever in this opinion reference is made to "defendant" it means that company.    A formal appeal was filed by the People's Trust Company, noticed below.

The mortgage sought to be foreclosed, dated November 7, 1906, was conditioned for the payment by the Edwin Shuttleworth Company to William G. Freedley, the sum of $105,000.00, specified in one promissory note of the same date, payable $3,000.00 January 1, 1907, $6,000.00 July 7, 1907, and $6,000.00 on or before the first days of January and July in each year thereafter until said principal sum should be fully paid, together with interest thereon at the rate of five per cent. per annum from and after January 1, 1907, payable semi-annually on the first days of January and July in each year, according to the tenor and effect of said note.    Neither the note nor the mortgage gave the payee any accelerating rights in case of default by the payor in making the payments as thus specified.

On January 22, 1918, the mortgage had been reduced to the sum of $85,000.00.    On that day the Shuttleworth Company, the Manchester Marble Company, and Katherine E. Freedley, executrix, entered into an agreement in regard to the purchase by the latter company of the property covered by the mortgage, by the terms of which the executrix agreed to reduce the mortgage from $85,000.00 to $55,000.00, and to limit said note accordingly, provided the Manchester Marble Company and one Perley R. Eaton (who then became interested in the latter company) would furnish a joint and several bond or obligation to serve as an additional obligation accompanying the Shuttleworth Company mortgage, upon the delivery of which the executrix agreed to accept the latter sum in full payment and discharge of each and every of the obligations under the note or certain obligation of the Shuttleworth Company, and provided upon the giving of a chattel mortgage of all personal property, machinery and fixtures on and about the premises upon which the Shuttleworth Com-

pany mortgage was secured, subject to a chattel mortgage held by the latter company from the Manchester Marble Company. In compliance with this agreement the latter company and Eaton made, executed and delivered to the executrix, their bond or obligation dated January 22, 1918, and also the chattel mortgage referred to.

By the terms of said bond or obligation it was agreed that the mortgage indebtedness should be and was reduced to the sum of $55,000.00, payable in installments of $250.00 per month during the period of the then existing war in which the United States was then engaged, and for a period of six months thereafter, and at the end of such period the monthly installments should be $500.00 per month, the first installment to be paid on March 1, 1918, and monthly thereafter, and whenever in any year more than 60,000 cubic feet of merchantable marble should be taken from the quarry per annum (which there never was) there should be paid an additional yearly payment of ten cents per cubic foot in excess of the said 60,000 cubic feet per annum to be credited as a deduction of the said principal; that the Manchester Marble Company should pay interest semi-annually at the rate of 5% per annum upon the unpaid monthly balance of principal, and produce to the said obligee on or before the first day of October in each year receipts for all taxes for the current year assessed upon said premises; and "that if at any time default shall be made in the payment of any installment of principal or interest as aforesaid for the space of thirty days after any payment thereof shall fall due, or in such production to the obligee, or her executors, administrators or assigns, on or before the first day of October of each and every year, of such receipts for taxes assessed upon the premises mortgaged, then, and in such case, the whole principal debt aforesaid, or so much thereof as shall then remain unpaid, shall, at the option of the said obligee, her executors, administrators and assigns, become due and payable immediately, and payment of said principal debt or of unpaid installments thereof and interest thereon may be enforced and recovered at once, anything herein contained to the contrary notwithstanding."

The scope of the right of acceleration given in the foregoing clause should be particularly noticed and kept in view. It is in terms restricted to defaults in the payment of installments of principal or interest "as aforesaid" for the space, etc., "or

in such production * * * of such receipts for taxes'' paid, etc. The words ''as aforesaid'' show that such right applies only in connection with the installments before-mentioned in that agreement, and in connection with the production of such receipts for taxes paid as are before-mentioned therein.

As a part of said agreement, the Shuttleworth Company conveyed the property described in the bill to the defendant on said January 22, 1918, by warranty deed with full covenants, except the said Freedley mortgage reduced to $55,000.00; and in confirmation of that deed the Shuttleworth Company again conveyed the same premises to the defendant free from all encumbrances except said mortgage to secure the sum of $55,000.00 the amount whereof unpaid, which the grantee assumed and agreed to pay.

On November 15, 1920, (by letter of that date referred to below in stipulation of May 31, 1923,) it was agreed to begin the monthly installments of $500.00 each, on December 1, following.

The bill in these proceedings was brought on March 5, 1923, to foreclose the Shuttleworth Company mortgage. The allegation therein regarding the amount of the mortgage was as follows: ''Conditioned for the payment of one hundred and five thousand dollars ($105,000) with interest at the rate of five per cent. per annum payable semi-annally, of which said sum and interest more than forty-five thousand dollars is now justly due and owing and has not been paid according to the effect of the same.'' The prayer of the bill was and has continued to be ''that the equity of redemption of said defendants (naming them), and their interest in said premises may be foreclosed agreeably to the provisions of law, and that the court will fix a short and early date for the redemption of said premises, * * *.''

On May 31, 1923, a stipulation was entered into between Katherine E. Freedley, administratrix of the estate of William G. Freedley, and the Manchester Marble Company, entitled in this suit, by which it was provided that the latter should pay the plaintiff forthwith upon the signing of this stipulation the sum of one thousand and fifty dollars, one thousand dollars of which was to apply on the Manchester Marble Company's indebtedness to the plaintiff and fifty dollars of which was to be paid by reason of costs and expenses in the preparation, service and entry of certain previously instituted proceedings of foreclosure between the same parties, and on the same mortgages, and to

cover the court costs and expenses of this proceeding to date; that the Manchester Marble Company should pay one thousand dollars on June 7, 1923, and one thousand dollars the 7th of each month thereafter until the sum then in arrears (principal and interest) under the terms of the original note and mortgage as amended by bond or obligation dated January 22, 1918, and as further varied or amended by letter of Lawrence, Lawrence & Stafford to the Manchester Marble Company, dated November 15, 1920, should be fully paid, and should pay all taxes hereafter accruing as they should become due until the said sum in arrears had been paid; that the back taxes on said property described in said mortgage should be paid in full on or before August 1, 1923; that in the event the Manchester Marble Company should fail to comply with any of the above agreements and stipulations, the plaintiff might "have her decree of foreclosure prayed for" on the first decree day following such failure of the Manchester Marble Company "to comply with said agreement and stipulation," and that the period of redemption might be a six months' period; and that upon a strict compliance with the terms, conditions and payments above set forth until the sum in arrears is paid as stated, the stipulation as to the entry of the decree of foreclosure with six months' period of redemption should lapse and cease to be effective, and the now pending foreclosure proceedings should then be discontinued.

The defendant contends that by entering into the foregoing stipulation of May 31, 1923, the plaintiff, *first*, waived any previous election now claimed by her to have been exercised to accelerate the maturity of the undue installments of the mortgage debt, and, *secondly*, waived the right itself thereafter to make any election to that end, such right not being reserved in or by that stipulation. These contentions, if well founded, are important and far reaching. By that stipulation the terms of the payments then in default were completely changed and the time extended in which the money thus called for could be paid; the monthly installments to be paid were increased from $500.00 to $1,000.00, and the time for paying installments was changed from the first day to the seventh day of each month; the costs and expenses (specified) up to that time were paid by the defendant; the provisions requiring the defendant to pay taxes, both past and future, on the mortgaged property, were materially changed; and instead of accelerative rights being given

or reserved to the plaintiff in event of default by defendant in complying with any of the agreements and stipulations contained in that instrument, she "may have her decree of foreclosure prayed for on the first decree" day following such default, and "the period of redemption may be a six months' period."

From the foregoing synopsis there should seem to be no doubt as to the soundness of defendant's contention that any previous election by the plaintiff, if such there were, to exercise the right of option given her by the bond or obligation of January 22, 1918, was waived by the stipulation of May 31, 1923 (*Hughes* v. *Farmers National Bank*, 83 Vt. 386, 76 Atl. 33); but the defendant says there was no such previous election made, and this is an important inquiry because of its possible effect, if made, on the question of her waiver of the optional right itself.

The findings state that during the trial of the cause and after defendant's counsel had stated that there was no provision in the bill claiming the whole amount of the mortgage debt to be due, or any reference to any writing under which an option to that effect could be claimed, and that nothing had been done to exercise such option, the plaintiff was permitted, subject to defendant's exception, to file an amendment to the bill, to be inserted after the second paragraph following the description of the property covered by the mortgage sought to be foreclosed. The said second paragraph was "that said land and property by deed dated January 22, 1918, was conveyed by Edwin Shuttleworth Company to Manchester Marble Company, subject to said mortgage." The amendment here inserted was: "And at said time said Manchester Marble Company entered into an agreement in writing to pay fifty-five thousand dollars of the remaining principal due upon said mortgage in installments of two hundred and fifty dollars per month for a certain length of time and then at the rate of five hundred dollars per month, and pursuant to agreement said Manchester Marble Company commenced said payments at the rate of five hundred a month on May 1, 1921; that said Manchester Marble Company is in default in many of said payments and has been so for a long time past, and in payment of taxes upon said property, and the full amount of principal is now due."

The chancellor found that no notice was given to the defendant by the plaintiff that she undertook to exercise her option to claim the whole amount due because of the failure to keep up

the payments; and that the only notice in such respect claimed to have been given by her "was the filing of" the bill in this case. But the chancellor further found "that the beginning of the foreclosure proceeding was an exercise by the plaintiff of the option to make then due all installments subsequently becoming due under the mortgage"; and that "the filing of the amendment to the bill of complaint was a further declaration to the same effect." Defendant excepted to each of these findings: to the former, on the grounds (a) that it was a question of law on the facts and not a question of fact, and (b) that on the facts and on the allegations of the bill, the beginning of such proceeding was not in law an exercise by the plaintiff of the option; and to the latter, on the grounds (c) that the filing of the amendment was not in law an exercise of said option, and (d) that upon the facts in the case and upon the amendment itself, the filing of the amendment was not an exercise of the option.

[1-3]    Considering the exception to the former finding, the allegations in the bill as brought showed that the foreclosure proceedings were based entirely on the mortgage as given, and they contained nothing indicating to the defendant that the proceedings were in any manner or for any purpose based or intended to be based on the acceleration clause contained in the tripartite agreement of January 22, 1918, nor that the plaintiff had elected to exercise the option given her by that clause. Such clause was not put in issue,—indeed neither the clause nor the agreement containing it was mentioned,—as adequate equity pleading required if intended to any extent or degree as a basis of recovery. *Davis* v. *Davis*, 81 Vt. 259, 69 Atl. 876, 130 A. S. R. 1035. In this connection it should be observed that the mortgage (also the note described therein) and the agreement mentioned were in fact and in law different instruments, the latter being entered into more than eleven years after the note and mortgage were executed and delivered, and in materially different circumstances. They did not have the same effect as to the maturity of the mortgage debt, nor as to the rights of the obligee in case of default by the obligor in the payment of any installment of principal or interest, or in the production of receipts for taxes paid. The obligee had no accelerative rights in case of defaults, except as given by that agreement, and those were not self-operative even though default existed—they were operative only when the obligee, in the exercise of the option given her, elected

3

to make them so and by some affirmative action made known to the obligor her intention to declare all the unpaid portion of the debt due.    *Van Dyke* v. *Cole,* 81 Vt. 379, 70 Atl. 593; *Clark* v. *Paddock,* 24 Idaho, 142, 132 Pac. 795, 46 L. R. A. (N. S.) 475; *Weinberg* v. *Naher,* 51 Wash. 591, 99 Pac. 736, 22 L. R. A. (N. S.) 956; 2 Jones Mort. (7th ed.) § 1182; 19 R. C. L. 496, 497.    Sufficient notice to that effect undoubtedly might have been by the bringing of foreclosure proceedings with averments in the bill showing an unmistakable purpose to exercise the option contained in the accelerating clause in the agreement.    *Cresco Realty Co.* v. *Clark,* 128 App. Div. 144, 112 N. Y. S. 550; *Hothorn* v. *Louis,* 52 App. Div. 218, 65 N. Y. S. 155, affirmed, 170 N. Y. 576, 62 N. E. 1096; *Pizer* v. *Herzig,* 120 App. Div. 102, 105 N. Y. S. 38; *Cole* v. *Hinck,* 120 App. Div. 355, 105 N. Y. S. 407; *Beck* v. *Williams,* 116 Misc. Rep. 80, 190 N. Y. S. 256; *Northwestern Mut. Life Ins. Co.* v. *Butler,* 57 Neb. 198, 77 N. W. 667; *Bank of Commerce* v. *Scofield,* 126 Cal. 156, 58 Pac. 451.    In this instance such averments for the purpose named would have been no more than is required by the rules governing equity pleading.    In *Still* v. *Buzzell,* 60 Vt. 478, 12 Atl. 209, it is said: "Strictly, the bill must be framed to the circumstances that exist when it is brought, and the orator must recover if at all, upon the allegations of his bill when applied to the circumstances then existing."

It is urged by plaintiff that it was unnecessary to set out in the bill the agreement by which the amount of indebtedness was reduced; that that agreement did not require plaintiff to give any notice of the exercise of the option; that the agreement said the whole principal debt should upon default at the option of the plaintiff become due and payable immediately and that payment thereof "may be enforced and recovered at once."    The foregoing, it is said, "clearly indicates that the bringing of a suit is in itself an exercise of the option"; that the bill alleges that more than $45,000 "is now justly due and owing," which sum was more than the total amount then secured by the mortgage; and that the last quoted words express the fact that the sum named was the amount which plaintiff claimed the right to have paid immediately by defendant, the word "now" clearly indicating, it is said, that no installments thereafter falling due are referred to.    But the bringing of *a suit* may or may not be sufficient notice to the obligor that the obligee has elected to

take advantage of an acceleration clause. The question is, whether the bill as brought in this case was notice to the former of such election by the latter. The allegation that "more than forty-five thousand dollars is now justly due and owing and has not been paid according to the effect of the same," was but a conclusion of law, and did not apprize the defendant of the fact that the plaintiff had elected to exercise her optional right of acceleration, making the whole debt then .due and payable. *Chesney* v. *Chesney*, 33 Utah, 503, 94 Pac. 989, 14 Ann. Cas. 935; *Moore* v. *Hobbs*, 79 N. C. 535. In addition to this, the bill, based as it was entirely on the mortgage as given, without any allusion to the plaintiff's optional right of acceleration, or to exercising the same, was notice to the defendant that she was seeking to foreclose the mortgage independently of such right. *Boston & Maine R. R.* v. *Union Mut. Fire Ins. Co.*, 92 Vt. 137, 101 Atl. 1012; *Davis* v. *Davis, supra.* As notice, the beginning of these proceedings was no broader than the bill. See *Simpson* v. *Denver & Rio Grande R. R. Co.*, 43 Utah, 105, 134 Pac. 883, 46 L. R. A. (N. S.) 1164.

The exceptions to the first finding must be sustained on both grounds (a) and (b) ; and we hold that the bringing of these foreclosure proceedings, on the allegations of the bill as brought, was not an election by the plaintiff to declare the whole debt due, and was not notice of such an election by her to the defendant.

[4] From the foregoing holdings it follows that the second finding to which exception was taken as before stated, namely, that "The filing of the amendment to the bill was a further declaration to the same effect," is immaterial. For the amendment was not retrospective as an election to take advantage of the option, nor as notice of such election. In those regards it did not affect matters which occurred before it was filed. Consequently it was not effective in either regard. At the time the amendment was filed (December 4, 1923), the stipulation of May 31, 1923, had been in force and acted upon for more than six months, since which last-named date there had been no option to exercise.

It is found that on December 18, 1923, the Manchester Marble Company had paid all taxes then due and had tendered to the plaintiff, and being refused, tendered same into court, all the installments due under the stipulation on that date.

On that day a decree, consented to by both parties, was

rendered by the chancellor, by which it was ordered, adjudged and decreed as follows, namely:

"1.  By the tender to the plaintiff by the defendant, Manchester Marble Company, of the overdue installments under the stipulation dated May 31, 1923, together with interest thereon and the deposit thereof in court, and the payment of the taxes, the defendant Manchester Marble Company has complied in equity with the terms of said stipulation and entitled to the continued benefit thereof, and said defendant Manchester Marble Company is restored to the full benefit of the provisions thereof.

"2.  The clerk of the Court of Chancery is ordered to pay over to the plaintiff the amount of said installments so deposited but without interest from the date of said deposits.

"3.  The plaintiff's application for a decree is denied and the foreclosure suit is stayed pending the future performance of the terms of the stipulation."

Before the foregoing decree was signed, in a letter dated one day earlier, the plaintiff's solicitor wrote the chancellor, consenting to the decree, "with this reservation, however, namely, that this shall not be a precedent for the Manchester Marble Company to delay payments under the stipulation, and that the plaintiff has the right to a decree in accordance with the stipulation if there is any delay in the payments."

The chancellor advised the solicitor for the defendant, that he had signed the decree in question, and of the contents of the above-mentioned letter from plaintiff's solicitor.  Whereupon, on December 20, defendant's solicitor wrote the chancellor, stating among other things, "I understand the effect of the reservation referred to is merely a reservation that in consenting to the decree it is without prejudice to the right that" plaintiff "claims, in case of a future delay in payment, to apply for a decree in accordance with the stipulation."  Further stating that the entry of the decree upon plaintiff's consent must not prejudice defendant's right to oppose a decree applied for by plaintiff and to be heard and defend against.

It is to be observed that the basis of this consent decree was the stipulation of May 31, 1923, and the reservation by letter to the chancellor in connection therewith, on the part of the plaintiff, also the interpretation of that reservation by letter to the chancellor, on the part of the defendant, was to the effect that in case of any future delay by the latter in making payments

under the stipulation, the plaintiff should have a right to apply for a decree of foreclosure in accordance with the stipulation, that is, as "prayed for," which (adverting to the quotation above from the bill) was a foreclosure "agreeably to the provisions of law."

The plaintiff accepted and received from the clerk of the court the amount of money deposited with the clerk as and for the purpose aforesaid, and by said decree ordered to be paid to her.

On February 7, 1925, on motion of the solicitors for the plaintiff, a further hearing was had on her claim that the installment of January 7, 1925, was in default. It appeared at the hearing that the defendant had continued to pay in accordance with said stipulation until the payment which became due on the day last mentioned, but that it had not paid the $1,000.00 then due nor tendered payment of the same. This default was admitted by defendant.

Thereupon the plaintiff claimed that, by reason of such default under the stipulation of May 31, 1923, she was entitled to a decree for the whole debt under the option given in the agreement of January 22, 1918. Defendant denied that plaintiff was entitled to such a decree, for that (1) she did not legally exercise the option contained in that agreement, and (2) on the facts of record she waived the right itself of such option, particularly by entering into the stipulation of May 31, 1923, and also by consenting to the decree dated December 18, 1923. Defendant claimed that in applying the period of redemption, there should be one period for the amount due February 7, 1925, and a separate period for each monthly installment as it should fall due in the future.

[5] The final decree rendered was in accordance with the claim of the plaintiff, that is, for the full amount due on the mortgage debt February 10, 1925, by accelerating the maturity of all installments not by their terms then due, and fixing one period of redemption for the whole sum with interest thereon from the date of the decree to the time of payment, etc. This was error for the one reason (if for no other) that the plaintiff's right of option under the agreement of January 22, 1918, as before discussed and held, ended in law when she entered into the stipulation of May 31, 1923, without therein or thereby reserving such right. It is unnecessary to repeat what we there said in

making the holding. The decree was not rendered "agreeably to the provisions of law," and consequently was not the "decree of foreclosure prayed for," the one to which the parties were entitled under that stipulation. Regarding the period of redemption, we assume that the new decree rendered on remand of the case will fix separate periods as in the circumstances equity requires.

[6-9]    On February 13, 1925, after the final decree was passed but before it was filed, the People's Trust Company of Lebanon, in the state of New Hampshire, asked to intervene as a party defendant to the case, on the ground that said Trust Company had made an attachment on the property described in the mortgage sought to be foreclosed. The record states that the attachment was made after this bill was brought and no tender was made of the amount due on the mortgage, nor offer to pay the same. The petition to intervene was denied. This denial was without error. The incumbrance by the attachment mentioned was created *pendente lite,* and so the attaching creditor was not a necessary party to the suit, although it is bound by the decree. Story Eq. Pl., § 194. And creditors attaching, *pendente lite,* have no right to come in by petition to defend the suit. *Davis* v. *Conn. Mut. Life Ins Co.,* 84 Ill. 508. They can make themselves parties to the suit only by filing a bill to protect their rights. 2 Jones Mort., § 1411; *People's Bank* v. *Hamilton Mfg. Co.,* 10 Paige (N. Y.) 481; *Loomis* v. *Stuyvesent, Ib.* 490.

*Decree reversed and cause remanded with directions to enter a decree of foreclosure with time to redeem, all in accordance with the views here expressed and not otherwise. Let the Manchester Marble Company recover its costs in this Court.*