(52 App. Div. 218.)

HOTHORN v. LOUIS et al.

(Supreme Court, Appellate Division, Second Department. June 12, 1900.)

1. MORTGAGES—FORECLOSURE—OPTION—ELECTION—NOTICE.

A mortgagor, in default in interest on a mortgage containing a clause making the principal debt due at the mortgagee's option on default. received a letter from the mortgagee's agent, in his own name, stating that he elected to "call the principal." On the following day he informed the mortgagor of the election, and she consented thereto, and agreed to raise the money to pay the debt, after having first tendered the interest, which was refused on the ground that the mortgagee had elected to treat the whole debt due. Failing in her efforts to raise the money, she tendered the interest to the mortgagee personally, who refused to accept it on the same ground. *Held*, that there was a sufficient notice of election to treat the whole principal due.

2. SAME.

The bringing of suit to foreclose a mortgage providing that, on default in interest, the principal shall become due, at the mortgagee's option, is notice of his election to treat the whole debt due, and no previous notice is necessary.

3. SAME.

A defaulting mortgagor will not be relieved from a covenant providing that on default in interest the whole debt shall become due at the mortgagee's option, in the absence of anything to render the enforcement thereof unconscionable.

4. WITNESS—COMPETENCY—HUSBAND AND WIFE—AGENCY.

A husband is competent to prove his agency for his wife when called by her for that purpose.

Appeal from special term, Kings county.

Action by Rosa D. Hothorn against Amelia E. Louis and another. From a judgment dismissing the complaint on the merits, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Herbert Reeves (Alexander S. Rowland, on the brief), for appellant.

Alexander S. Bacon, for respondents.

HIRSCHBERG, J. The action is brought to foreclose a purchase-money mortgage made by the defendant Amelia E. Louis to the plaintiff. The mortgage and the bond to which it is collateral each contains the usual 30-day interest clause, making the entire principal due, at plaintiff's option, on default. Six months' interest became due on May 13, 1899. The 30 days expired on the 12th day of June following. The only witnesses examined on the trial were the plaintiff's husband and the defendant Louis. The proof indicates that the mortgage was given as a purchase-money mortgage on a trade of property belonging to plaintiff's husband, and that it was taken subject to two prior incumbrances. At all events, it establishes without dispute that the money secured by the bond and mortgage belonged to the plaintiff's husband; the securities being taken in the name of the plaintiff, as a present to her from him. It also establishes the fact that the husband acted as his wife's agent in all the transactions connected with the mortgage, and that he had au-

thority from his wife to so act for her. The proof on this point, as, indeed, on every question in the case, is undisputed. The bond and mortgage also contain a provision that the principal shall become due on default in the payment of taxes, and such default had occurred before the default in payment of interest; but the plaintiff, or her husband acting for her, had refused to elect that the principal should then become due. After the 30-days arrearage of interest had elapsed, however, the plaintiff's husband wrote a letter to the defendant Louis, dated June 14, 1899, in which he said:

"Inasmuch as you have defaulted in payment of interest on mortgage, I herewith have to inform you that I now call the principal, and unless you pay same plus interest by 21st inst. I shall begin foreclosure proceedings at once. In this connection, I might just as well inform you that I do not care at the present time for any more lots on the Parkway, my business having changed for the worse recently, and that the sole reason why I call the mortgage is that I need the money badly, since I may even be forced to dispose of the house I built on the Boulevard. If you care to make an exchange of your Boulevard lots against my new house, shall be pleased to talk to you, and might just as well tell you that you can secure a bargain. Trusting that this explanation will show you that my calling in the mortgage is not done for spite, but because I can use the money to much better advantage, I hope you will provide for payment at an early date."

The defendants knew that this letter referred to the mortgage in question. There was no other mortgage than the one in question to which it could refer, and, writing under date of August 4th, the defendants' attorneys addressed to the plaintiff's husband a letter on the subject, in which the following phrases occur:

"Mrs. Amelia E. Louis has referred to us your several letters wherein you claim that the mortgage held by your wife on her property is due by reason of nonpayment of interest within thirty days after it was due. * * * She has since tendered the money to your wife, who holds the mortgage. We have advised Mrs. Louis that your wife, the only party in interest, has never declared the mortgage due, and that the tender to her is good. She does not recognize any letters from you as emanating from your wife."

With full knowledge, therefore, that the letter from the plaintiff's husband related to the plaintiff's mortgage, the defendant Louis, on the day following the sending of the letter, viz. June 15, 1899, called on the plaintiff's husband in regard to the matter, and tendered him a check for the interest, payable to his wife, which he refused. Both witnesses agree that the refusal was based on the fact that by the default in the payment of interest the whole principal had become due, at the option of the mortgagee. The plaintiff's husband testified: "I said to her: 'Mrs. Louis, I won't take interest now; I don't want it. I want now the whole principal.'" The defendant Louis testified: "I handed him the check for the amount in his wife's name, to his wife's order, and he put out his hand, as if he was going to take it, drew it back, and said he would not accept it, since I had defaulted on the interest, and I had given him the chance to call in the principal." Both parties also agree that a conversation then ensued in which the defendant Louis asked the plaintiff's husband to delay the foreclosure proceedings so as to give her an opportunity to raise the money, and that he consented. He testified that she promised to pay the mortgage, principal and interest. She tes-

tified that she asked him not to begin foreclosure proceedings, but to give her an opportunity to raise the money. On his promise to do so, she testified that she spent six weeks trying to raise the money, but could get no loan on a second mortgage. On July 26, 1899, he wrote her again saying: "Not having heard from you for a month, 1 must ask you to kindly pay that mortgage now without delay. 1 really expected that the matter would be attended to before this, and cannot wait any longer. If not convenient to pay the whole amount, give me a couple of hundred dollars on a/c, and balance at the rate of $100 monthly." Mrs. Louis then, on August 2, 1899, saw the plaintiff in person, and tendered the interest money to her, but the plaintiff refused to receive it, and shortly thereafter commenced this action on her election to regard the whole principal due, in accordance with the terms of the bond and mortgage. At this interview between the defendant Louis and the plaintiff, it would seem a discussion was had on the subject of the payment of the mortgage; for on the same day the plaintiff's husband wrote to the defendant informing her of a party willing to make a loan more than sufficient to take up the mortgage, and on reasonable terms, and adding that "this will be much cheaper than taking a new mortgage for the whole amount from Thrift, as you mentioned to Mrs. H. to-day." At this point the negotiations between the principal parties ceased, however, and two days afterwards the defendants' attorneys wrote the letter to the plaintiff's husband already mentioned, and in which they say, "If you wish to foreclose the mortgage, we will accept service of papers for Mrs. Louis."

The learned trial justice dismissed the complaint on the merits, on the ground that "the plaintiff did not elect that the mortgage set forth in the complaint be due and payable, and notify the defendant Amelia E. Louis of such election, before the amount of interest due was duly tendered by the defendant Amelia E. Louis, mortgagor to the plaintiff, mortgagee, and that, therefore, the said mortgage was not due and payable at the beginning of this action." The finding is not only without evidence to support it, but, as has been seen, it is in direct conflict with all the evidence in the case. It is true neither in law nor in fact. The appellant's counsel cites no case, and we find none, which holds that a mortgagee must notify a mortgagor, in arrears because of nonpayment of interest, of an election to regard the entire principal as due, before tender of payment of interest, as a condition of the making of such election. Leaving out all the correspondence in the case, and the interview between the defendant Louis and the plaintiff's husband, and limiting the case to the single fact that after the 30 days had expired the defendant then tendered the interest to the plaintiff, and she refused to receive it, but brought action to foreclose for the entire sum, principal and interest, and her right to maintain the action would be absolute and undoubted. Osborne v. Ketcham, 76 Hun, 325, 27 N. Y. Supp. 694. She could maintain the action had no tender been made to her, and had no notice been served by her husband, acting as her agent or otherwise. The provision is that on default in interest for 30 days the principal becomes due if the plaintiff sees fit to so elect, and she can sue with-

out serving any notice. The defendant might have required a con-
dition to be inserted in the bond and mortgage that notice should
accompany and manifest the election, but the court cannot inter-
polate it.

As was said by the court in Beach v. Shanley, 35 App. Div. 566,
568, 55 N. Y. Supp. 130:

"It is undoubtedly true that where, in order to entitle the plaintiff to bring
an action for foreclosure, it appears upon the face of the complaint that it is
necessary that such election should be made, it has been held that the bring-
ing of the suit is to be deemed an election."

In Hunt v. Keech, 3 Abb. Prac. 204, the court said:

"The commencement of this suit is a sufficient notice of the determination
that the plaintiff intends to treat the whole sum as due."

In New York Security & Trust Co. v. Saratoga Gas & Electric
Light Co., 88 Hun, 569, 586, 34 N. Y. Supp. 890, the court said:

"As to the exercise of the option to declare the principal sum due, the ma-
jority of the bondholders requested the trust company to exercise such option.
The contention is made that the trust company did not legally comply with
that request; that the notice sent by the secretary of the company to the gas
company was not sufficient, it not appearing that he was authorized so to do
by a resolution of the board of directors of the trust company. I am inclined
to think that no such resolution was necessary, that it was a matter that
called for no deliberation or action upon the part of the directors, but that it
was a mere executive duty, which the executive officers of the trust company
could perform in the ordinary discharge of their duty. By the terms of the
mortgage the request of the bondholders was conclusive and mandatory; but,
be that as it may, the bringing of the suit itself was a sufficient declaration of
its intention to exercise such option."

In Bank v. Kidder, 106 N. Y. 221, 12 N. E. 577, Judge Peckham
said (page 228, 106 N. Y., and page 579, 12 N. E.):

"It cannot even be argued here (assuming the argument would be sound,
which we do not decide) that the mere failure to pay, either the interest or
the promised amount, into the sinking fund, would not, in and of itself, render
the principal of the bonds due without some action looking to that end on the
part of the bondholders or the trustees under the mortgage, because it was
simply a privilege extended to them to so consider it at their election, which,
until some action looking to its enforcement should be taken on their part,
rested in abeyance and might be waived. The answer is, there was an elec-
tion in this case. The action to foreclose the mortgage, based upon both these
defaults, was such election, and the defendants, when they purchased the
bonds, knew that the company was in the hands of receivers."

But the defendant here had abundant notice of plaintiff's election
to consider the whole sum due. She had the letter from the plain-
tiff's agent explicitly informing her of the fact. After its receipt
she had a personal interview with the agent, when she was informed
personally of the election, assented to it, and expressly agreed to
raise the money to pay off the mortgage, principal and interest.
Having first tendered the interest, which was refused, and the rea-
son for the refusal distinctly stated, viz. that the plaintiff, through
her husband, had elected to consider it all due, and having then
promised to raise the money in order to pay off the mortgage, but
failing in her efforts after several weeks' trial, she finally visited the
plaintiff in person, and tendered her the interest money, which was
again refused, and refused with the statement that the plaintiff was

acting in the matter in accordance with her husband's advice. To hold in such a case that there has been no notice of an election to consider the principal due, and to refuse to accept the interest without it, is to utterly ignore and disregard the plain law and the undisputed facts.

It is unnecessary to consider cases where the courts have relieved defaulting mortgagors who were the victims of some unconscionable conduct on the part of the mortgagees. No such element exists in this case. The plaintiff not only refused to take advantage of the defendant's first default, but proved patient and forbearing after the second one, insisting only upon her legal rights, but willing to accord the defendant reasonable time and opportunity to pay her debt, and offering to receive it monthly in small installments. The action to foreclose was not brought until after the defendant Louis had exhausted her efforts to raise the money, in which efforts she was not only actively, but successfully, aided by the plaintiff and her husband, until after the defendant had rejected a loan found for her by the plaintiff, and which would, if accepted, have paid the mortgage in full, and until after the defendant's attorneys had notified the plaintiff's husband, in substance, that he and his letters in reference to the mortgage held by his wife on defendant's property would be ignored in the transaction, that they had advised the defendant Louis that she had a technical defense in the assumed fact that the plaintiff had never herself declared the mortgage due, and that, therefore, the tender to her was good, and actually inviting service on them of the foreclosure papers, if he, the plaintiff's husband, wished to foreclose the mortgage. In French v. Row, 77 Hun, 380, 28 N. Y. Supp. 849, where a defaulting mortgagor was relieved because the course of dealing between him and the mortgagee induced the belief that the interest had in fact been paid, the court stated the rule as follows (page 383, 77 Hun, and page 850, 28 N. Y. Supp.):

"The general rule relating to mortgages containing a provision that, in case of default in payment of part of the amount secured, the whole shall become due, at the option of the mortgagee, is that the provision is a valid one, and courts will grant no relief to a mortgagor from the effect of his default, in the absence of fraud or improper conduct on the part of the mortgagee, or anything to render it unconscionable to avail himself of the provision in it. Bennett v. Stevenson, 53 N. Y. 508; Malcolm v. Allen, 49 N. Y. 448; Hale v. Gouverneur, 4 Edw. Ch. 207; Ferris v. Ferris, 28 Barb. 29; Noyes v. Anderson, 124 N. Y. 180. 26 N. E. 316; Valentine v. Van Wagner, 37 Barb. 60."

"And if," said Chancellor Walworth in Noyes v. Clark, 7 Paige, 179, 180, "from the mere negligence of the mortgagor in performing his contract, he suffers the whole debt to become due and payable, according to the terms of the mortgage, no court will interfere to relieve him from the payment thereof according to the conditions of his own agreement."

The cases cited by the respondents' counsel on the question of the effect of a tender of the amount due on a mortgage as a means of destroying the lien in case of refusal to accept have manifestly no bearing on the case. Neither is there any force in the point that the agent, plaintiff's husband, was not competent to prove the agency. This would be true as against the principal, but it is not so where

the agent is called as a witness by and for the principal to prove the agency in her behalf. Moreover, in this case all the parties knew perfectly well that the plaintiff's husband was in fact her agent, and the defendant dealt with her in that capacity. But if any doubt existed on that point it was resolved when the defendant Louis visited the plaintiff herself, and learned from her that her husband was acting for her in the matter, and that in refusing to take the interest without the principal she was acting under his advice. The judgment should be reversed.

Judgment reversed, and new trial granted, costs to abide the final award of costs. All concur.